Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,353-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

LATERRIAN LEWIS                       Appellant

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Jackson, Louisiana
Trial Court No. 51,500

Honorable William R. "Rick" Warren, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Sherry Watters

LATERRIAN LEWIS                       Pro Se

DANIEL W. NEWELL                      Counsel for Appellee
District Attorney

DARRELL ROBERT AVERY
PERRIN NELSON SMITH, JR.
Assistant District Attorneys

* * * * *

Before STONE, COX, and MARCOTTE, JJ.

**STONE, J.**

The defendant, Laterrian Lewis ("Lewis"), was convicted of four offenses arising out of the same event. The state filed a habitual offender bill of information alleging that Lewis is a fourth or subsequent felony offender pursuant to La. R.S. 15:529.1. The trial court found that the state's evidence adequately proved Lewis' status as such and rendered an enhanced sentence of thirty years. Lewis filed this appeal, wherein he does not challenge his instant convictions but instead makes several arguments challenging the habitual offender adjudication and sentencing. He also argues that his sentences are constitutionally excessive.

### FACTS AND PROCEDURAL HISTORY

On May 17, 2020, Lewis entered the residence of his intimate partner, Kaley Hall (the "victim"), without permission while she slept and began to severely beat her with his fists. The victim managed to jump through a closed window to escape. Meanwhile, Lewis hurriedly fled the victim's residence in his car but shortly thereafter lost control of his car and ran off the road. Lewis' car came to rest in the yard of Mr. David Gragg and was stuck there because of the softness of the ground. Upon exiting his car, Lewis fled on foot and subsequently called 911 alleging that the victim had stolen his car. Shortly thereafter, Lewis was arrested and found to be in unlawful possession of hydrocodone. Lewis was charged by bill of information[1] with five offenses:

> COUNT 1: committed the offense of second degree battery by intentionally inflicting serious bodily injury on K.H.

---

[1] It states in its heading that the defendant's birth date is October 5, 1985, and that his social security number is XXX-XX-4546. The prosecution filed an amended bill which replicated this identifying information.

COUNT 2: did, without authorization, enter into an inhabited dwelling belonging to and used as a place of abode by K.H., with the intent to use force or violence upon the person of another, namely K.H.;

COUNT 3: did knowingly or intentionally possess a controlled dangerous substance or controlled substance analogue classified in Schedule I, to-wit: Clonazolam;

COUNT 4: did knowingly or intentionally possess a controlled dangerous substance or controlled substance analogue classified in Schedule II, to-wit: Hydrocodone; and

COUNT 5: did tamper with evidence by intentionally distorting the results of a criminal investigation by causing or inducing the alteration, destruction, mutilation or concealment of any object with the specific intent to impair the object's integrity or availability for use in any criminal proceeding

After a jury trial, Lewis was convicted and sentenced as follows:

(1) simple battery; six months in parish jail;
(2) unauthorized entry of inhabited dwelling; six years at hard labor;
(3) guilty: possession of CDS (hydrocodone); two years at hard labor;
(4) guilty: obstruction of justice; five years at hard labor.

The trial court ordered that these sentences run *consecutively*. The Uniform Sentencing Commitment Order ("USCO") identifies Lewis as a black male with the same birth date (October 5, 1985).

After the initial sentencing, the state filed a habitual offender bill of information alleging the following predicate convictions:

- Jackson Parish: August 5, 2010—pled guilty to aggravated battery (Exh. A; Second JDC, docket 41,674)
- Jackson Parish: May 19, 2013—pled guilty unauthorized entry of inhabited dwelling (Exh. B; Second JDC, docket 45,826)
- Bienville Parish: January 28, 2020—obstruction of justice (Exh. C; Second JDC, docket 50,394)
- Claiborne Parish: November 16, 2020—introduction or possession of contraband in/into a prison (Exh. D; Second JDC, docket 32,957)

2

The state presented the testimony of three witnesses and introduced four exhibits as evidence of Lewis' status as a fourth or subsequent habitual felony offender.

Regarding Jackson Parish docket 41,674 (2010, guilty plea to aggravated battery), Deputy Wesley Horton ("Dep. Horton") testified that he worked for the Jonesboro Police Department at the time of Lewis' arrest, and identified Lewis as the person for whom he (the deputy) obtained an arrest warrant for the attempted second degree murder of a Deallo Baker in mid-April of 2009.[2] Dep. Horton was not present at the arrest or conviction, and said he was "sure" he had seen Laterrian Lewis since 2009 since he continued to work at the same job for a while afterward.

The prosecution introduced Exhibit A through the testimony of Dep. Horton. This exhibit consists of certified copies of the minutes of court and the bill of information. The bill was filed June 3, 2008, and alleges that Lewis committed this offense on or about April 12, 2008. The bill bears an unsigned handwritten amendment reducing the charges to "aggrivated [sic] battery" on August 5, 2010.[3] Dep. Horton was shown the minutes from Exhibit A, which reflect that on August 5, 2010, a Laterrian Lewis pled guilty to an amended charge of aggravated battery.[4] The minutes state Lewis' social security number (XXX-XX-4546) and date of birth (October

---

[2] The minutes reflect that the defendant had already been arrested as of the date of his arraignment, as the court also continued the defendant's motion to reduce bond on that date and heard and denied the motion on July 1, 2008.

[3] The minutes also reflect the charge being amended to "Aggravated Battery."

[4] Original charge: attempted second degree murder.

5, 1985), and Lewis' sentence of 10 years at hard labor.[5] The name of the victim is not stated on the bill of information. Nor is it stated anywhere in Exhibit A.

Regarding Jackson Parish docket 45,826 (2013, guilty plea, unauthorized entry of inhabited dwelling), Deputy Tim Wyatt ("Dep. Wyatt"), of the Jackson Parish Sherriff's Department, testified that he was working as a patrolman or patrol supervisor in 2013, and was personally involved in arresting a Laterrian Lewis, and identified Lewis as the same person as the arrestee. Dep. Wyatt further stated that he had subsequently seen Lewis in court numerous times.

The state used Dep. Wyatt's testimony to introduce Exhibit B, consisting of certified copies of the court minutes, bill of information, and judgment of conviction in Jackson Parish docket 45,826. The Laterrian Lewis therein convicted is alleged to have a birth date of October 5, 1985, and a social security number of XXX-XX-4546. The date of the offense alleged in the bill is September 27, 2013. On May 19, 2014, the Laterrian Lewis therein pled guilty to "unauthorized entry of an inhabited dwelling."[6] The minutes of the guilty plea reflect the same social security number and birth date. The judgment of conviction is dated May 19, 2014, and reflects

---

[5] The court suspended all but four years of this sentence and ordered five years of supervised probation upon completion of the four-year jail term.

[6] The bill of information bears a purported amendment–apparently handwritten by the minute clerk–that changes the name of the charge from "Home Invasion" to "Unauthorized Entry of an Inhabited Dwelling." However, the statute cited for the offense, La. R.S. 14:62.8, was not changed. That statute defines "Home invasion…[as]…the unauthorized entering of any inhabited dwelling…[with the intent to commit specified criminal acts therein]." La. R.S. 14:62.3 separately criminalizes such entry when intentional but committed without the intent to commit a crime therein; this statute is entitled "Unauthorized entry of an inhabited dwelling."

the same social security number and birth date. The Laterrian Lewis therein convicted received a sentence of four years at hard labor with credit for time served since his initial arrest on October 5, 2013.

Finally, Probation Officer Charles Herman ("Ofc. Herman") testified that he has been in his current employment since 2015 and did intake work regarding Laterrian Lewis' parole on February 20, 2020, i.e., parole from incarceration for aggravated battery and obstruction of justice convictions. He stated that this intake process usually takes two to three hours. On direct examination, Ofc. Herman identified Lewis as the same person on whom he did parole intake and the same person as the convict on all four predicate convictions. He at first denied that he had supervised Lewis' parole but then implied otherwise when the prosecutor asked him questions presupposing that he had supervised Lewis. The prosecution led Ofc. Herman, asking if he, "as part of his supervision of [Lewis] on parole," found that Lewis "had been convicted of a subsequent felony in Claiborne Parish?" Ofc. Herman responded "yes, sir," and indicated that the conviction was on Claiborne Parish docket 32,957 obtained on November 16, 2020.

Yet on cross-examination, Ofc. Herman again stated that he had not supervised Lewis. Ofc. Herman indicated that he based his testimony on the PSI report compiled for the instant case, which he did not prepare. He stated that he believed a Shirley Warren made the report, and that he had not "double-checked" all of it. The state did not offer the PSI into evidence.

The state introduced Exhibit C via Ofc. Herman's testimony. The state rested after Ofc. Herman's testimony. Exhibit C includes a certified copy of a bill of information—filed in Bienville Parish under docket 50,394—charging Lewis with obstruction of justice pursuant to La. R.S.

5

14:130.1; the bill alleges that Lewis committed this offense on or about October 26-28 of 2018. This exhibit also includes a certified copy of a written guilty plea form which reflects that the date of birth of the Laterrian Lewis who therein pled guilty is October 5, 1985. It also reflects that he is a black male with a state identification number of xxxxx7342. This plea agreement was signed on January 28, 2020. The court rendered a sentence of two years at hard labor with credit for time served since November 7, 2018.

Thereafter the court took up Lewis' motion to quash the habitual offender bill. Defense counsel argued: (1) the earliest two of the predicate convictions were invalid for purposes of the habitual offender proceeding because they were based on unsigned handwritten amendments to the bill;[7] (2) Exhibit A was insufficient to prove the 2010 "aggrivated [sic] battery" conviction because the bill did not name the victim and misspelled the name of the offense; (3) Exhibit B was insufficient to prove conviction of

---

[7] La. C. Cr. P. arts. 473, 487, and 384. Re: Exh. A: Pursuant to La. C. Cr. P. art. 473, the defendant argued that the name of victim is required for crimes such as second degree murder and aggravated battery to be charged validly. The bill of information, in both its original and amended form, fails to state the name of the alleged victim.

Re: Exh. B: Relying on article 384, The defendant argued oral amendment in open court invalid because ADA signature is required. The handwriting on the bill indicating amendment is not signed—so cannot be effective (e.g., could have been done by minute clerk.) The trial court, however, did order the bill so amended in open court. The court pointed out that no contemporaneous objection was made. Article 487 is also relevant as it provides that misspelling does not invalidate a charge, but it also requires that a statute be cited as defining the crime charged, and in crimes with a specific victim, name the victim.

Re: Exhs. C and D: The defense argues that the evidence fails to prove that the defendant is the same Laterrian Lewis as was convicted of the predicate offenses, since it was testimony of Ofc. Herman who admittedly had no personal knowledge of the convictions.

The state argued that prior proceedings are presumed valid, and that objection thereto is waivable by deadline and by lack of specification. The state asserts lack of specification in the motion to quash. The defense countered that it could not be specific prior to the expiration of the deadline because it did not then have the state's exhibits to review.

unauthorized entry of an inhabited dwelling because the bill does not cite the statute defining the crime; and (4) the latter two predicates were not proved because Ofc. Herman had no personal knowledge of them.

At the conclusion of the habitual offender adjudication, the trial court denied the motion to quash and determined that the state had proved beyond a reasonable doubt that Lewis was a fourth (or subsequent) felony offender. The defense requested a downward deviation from the statutory minimum of 20 years. The court sentenced Lewis to "30 years at hard labor," referring to the reasons expressed at original sentencing. The trial court neither specified which of the underlying sentences it enhanced, nor vacated any of the underlying sentences in connection with the habitual offender adjudication. Lewis, thereupon, moved the court to reconsider but made no argument other than citing *State v. Dorthey*. The trial court denied the motion.

## ASSIGNMENTS OF ERROR

On appeal, Lewis argues: (1) that his right to counsel was violated by the trial court's denial of his motion to continue the habitual offender proceeding to allow him to obtain different counsel; (2) that the evidence was insufficient to prove him a fourth-time offender under La. R.S. 15:529.1; (3) that his sentences are illegal and indeterminate; and (4) that his sentences are unconstitutional.

## LAW AND ANALYSIS

### Continuance; right to choose counsel

Lewis argues that the trial court erred in refusing his motion to continue the habitual offender adjudication to allow him to change lawyers. He argues that the defense counsel had not spoken with him in the months

preceding the adjudication hearing, and he had no notice of the habitual offender proceedings against him (despite having been present at his arraignment on the habitual offender bill wherein he pled not guilty).

Lewis' argument that he had no notice of the habitual offender bill pending against him must be regarded as false, as the record shows that he was present in court with counsel for his arraignment on that bill. From that point onward, Lewis knew that if he wanted to change lawyers, he needed to act without unreasonable delay. He failed to do so. Regardless, our ruling on the remaining matters moots all aspects of this issue.

**Sufficiency of evidence of fourth felony offender status**

Lewis argues that: (1) one of the predicate convictions did not occur until after the instant offenses; and (2) the state failed to prove beyond a reasonable doubt his identity as the person who was convicted of the predicate felonies. The predicate convictions offered were:

- August 5, 2010—pled guilty to aggravated battery (Exhibit A; Second JDC, Jackson Parish, 41,674)
- May 19, 2013—pled guilty unauthorized entry of inhabited dwelling (Exhibit B; Second JDC, Jackson Parish, 45,826)
- January 28, 2020—pled guilty to obstruction of justice (Exhibit C; Second JDC, Bienville parish docket 50,394)
- November 16, 2020—introduction or possession of contraband in/into a prison (Exhibit D; Second JDC, Claiborne Parish docket 2020-F-32957)

***Sequencing.*** Lewis argues that La. R.S. 15:529.1(A) precludes the use of a conviction as a predicate if, as here, it was obtained after the instant offense(s) were committed:

> Any person who, after having been convicted within this state of a felony, thereafter, commits any subsequent felony within this state, [shall be subject to enhanced

8

punishment hereunder] upon conviction of said
[subsequent] felony[8]

This statutory language must be given literal effect. The November 16, 2020, conviction cannot be counted as a predicate conviction because it was not obtained until after Lewis *committed* the *instant* offenses on May 17, 2020. The fact that Lewis committed the offenses underlying the November 16, 2020, conviction before May 17, 2020 (i.e., the date of the instant offenses) is irrelevant. This conviction cannot serve as a predicate for purposes of the instant habitual offender bill.

***Cleansing periods: error patent.*** Though not specifically argued by the defense, our review of the sufficiency of the evidence reveals that the state was required to, but did not, prove non-expiration of the cleansing period for the 2014 conviction for unauthorized entry into an inhabited dwelling. That period is established by La. R.S. 15:529.1(C), which in relevant part, provides:

> (1) Except as provided in Paragraphs (2) and (3) of this Subsection, the current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than five years have elapsed [i] between the date of the commission of the current offense or offenses and the expiration of the correctional [custody and/or] supervision…for the previous conviction or convictions, or [ii] between [a] the expiration of the correctional [custody and/or] supervision…for each preceding conviction or convictions alleged in the multiple offender bill and [b] the date of the commission of the following offense or offenses. In computing the intervals of time as provided in this Paragraph, *any* period of parole,

---

[8] The defendant cites *State v. Johnson*, 03-2993 (La. 10/19/04), 884 So. 2d 568, and *State v. Landfair*, 10-1693 (La. App. 4 Cir. 7/20/11), 70 So. 3d 1061, as further support for his literal application of the statutory language. However, neither of these cases squarely addressed the circumstances presented here. *Johnson* held that multiple convictions obtained on the same day could be counted as separate predicate offenses if based on unrelated conduct. *Landfair* held that there was no sequencing requirement *amongst* the predicate convictions; it did not address the question of whether a conviction obtained after commission of the instant offense could be used as a predicate.

9

probation, or incarceration…shall not be included in the computation of any of the five-year periods between the expiration of the correctional [custody and/or] supervision…and the next succeeding offense or offenses. (2) Except as provided in Paragraph (3) of this Subsection, the current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed [i] between [a] the date of the commission of the current offense or offenses and [b] the expiration of correctional [custody and/or] supervision…for a crime of violence…or [ii] between [a] the expiration of correctional supervision…for each…[predicate conviction]…for a crime of violence…and [b] the date of the commission of the following offense or offenses. In computing the intervals of time as provided in this Paragraph, *any* period of parole, probation, or incarceration…shall not be included in the computation of any of the ten-year periods between the expiration of correctional [custody and/or] supervision …for a crime of violence…and the next succeeding offense or offenses. (Emphasis and bracketed material added.)

In *State v. Boykin*, 29,141 (La. App. 2 Cir. 1/31/97), 688 So. 2d

1250, 1257–58, we explained:

This "cleansing period" begins to run from the date that a defendant is actually discharged from state custody and supervision. The state has the burden of proving the date of defendant's discharge from state supervision. Where a defendant has been adjudicated a habitual offender, the state's failure to prove the defendant's date of discharge and thus prove that the "cleansing period" has not expired is *error patent* on the face of the record. (Internal citations omitted; emphasis added.)

Lewis' 2014 conviction for unauthorized entry into an inhabited

dwelling has not been proved to be unexpired. That is because: (1) the

prosecution failed to introduce any evidence of when Lewis was

unconditionally released from correctional custody and/or supervision; and

(2) more than five years elapsed between this predicate conviction and the commission of the current offenses.[9]

**_Identity._**  Lewis argues that the state failed to introduce sufficient evidence identifying him as the person convicted as to all predicate convictions.

In _State v. McGill_, 52,169 (La. App. 2 Cir. 8/15/18), 253 So. 3d 872, 876, _writ denied,_ 18-1552 (La. 3/25/19), 267 So. 3d 594, this court stated:

> To meet its burden under the Habitual Offender Act, the state must establish both the prior felony conviction and the defendant's identity as the same person who committed that prior felony. Both the identity and the prior conviction alleged must be proven beyond a reasonable doubt. The trial court's determination of this question of fact will only be reversed if it is clearly wrong.
> The Louisiana Supreme Court has repeatedly held that the Habitual Offender Act does not require the state to use a specific type of evidence to carry its burden at a habitual offender hearing. Rather, prior convictions may be proved by any competent evidence. Various methods of proof establishing identity have been recognized as sufficient to sustain the state's burden of proof, including testimony of witnesses, expert opinion as to fingerprints, photographs contained in duly authenticated records, and evidence of identical driver's license number, sex, race, and date of birth. (Internal citations omitted.)

Furthermore, "[a] trial court may take judicial notice during habitual offender proceedings of any prior proceeding which was a part of the same case it had previously tried." _State v. Bell_, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307, 312.  In _Bell_, this court recognized the authority of the sentencing judge, in deciding the habitual offender enhancement, to take

---

[9] Aggravated battery is a crime of violence.  La. R.S. 14:2(B).  It is, therefore, subject to the 10-year cleansing period in La. R.S. 15:529.1(C)(2).  Because the conviction for this predicate offense occurred less than ten years before the commission of the instant offenses, the cleansing period cannot possibly have expired.  Likewise, the defendant's January 28, 2020, conviction for obstruction of justice cannot possibly have expired.

judicial notice of the reasons she articulated as the basis for the initial sentence. *Id.* However, our statement in *Bell* does not supplant La. C.E. arts. 201 and 202, which substantially restrict the facts that can be so established.

Here, the state relies predominantly on "evidence of identical driver's license number [or social security number], sex, race, and date of birth." In the trial of the instant offenses, the testimony of one of the arresting officers included a description of the Laterrian Lewis he arrested as a black male; at trial, the deputy identified Lewis as that same person. However, neither the bill of information, the amended bill of information, nor the USCO relating to the instant offenses were introduced into evidence at the trial on the instant offenses. Nor were they introduced in the habitual offender adjudication. Therefore, while the Laterrian Lewis convicted of each the predicate offenses has been proved to be one and the same person (by his matching social security number and birth date with respect to all the predicates),[10] the Laterrian Lewis convicted of the *instant* offenses has not been proved to be one and the same as he who was convicted of the *predicate* offenses. The trial court cannot take judicial notice of the birth date and social security numbers attributed to Lewis in the instant bills of information and the original USCO, if for no other reason, because neither such document was introduced into evidence in the prior proceedings. La. C.E. arts. 201 and 202.

---

[10] These were introduced into evidence, as Exhibits A, B, and C, at the habitual offender adjudication, as discussed in the earlier sections of this opinion.

**Illegal sentence**

Lewis argues that: (1) the trial court failed to specify which of the sentences for the instant offenses would be enhanced, thus making the sentence "indeterminate"; and (2) the trial court erred in failing to vacate the sentence for the underlying offense(s) that were enhanced as required by La R.S. 15:529.1(D)(3), which states:

> When the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court…the court shall sentence him to the punishment prescribed in this Section*, and shall vacate the previous sentence if already imposed*, deducting from the new sentence the time actually served under the sentence so vacated. (Emphasis added.)

In sum, Lewis asks that the case be remanded and that the trial court be ordered to specify which underlying sentence is enhanced, and that such underlying sentence be vacated as it is replaced by the enhanced sentence.

Lewis is correct. The trial court failed to specify which initial sentence was enhanced, and the statutory language supports Lewis' argument that the initial sentence serving as the basis of the enhancement must be vacated as it is required to be replaced by the enhanced sentence.

**Excessive sentences**

Lewis argues that the trial court exceeded constitutional limits in imposing the "maximum" sentence for all of the instant offenses and ordering that they run consecutively. However, because Lewis' argument about the illegality and indeterminacy of his sentences is correct, it would be premature to determine excessiveness at this point.

## CONCLUSION

Lewis' convictions for the instant offenses are affirmed. Lewis'

13

adjudication as a habitual offender is reversed as to all predicate offenses alleged in the habitual offender bill of information. Lewis' enhanced sentence is vacated. Lewis' claim of excessiveness is pretermitted as premature. His claim of lack of notice and violation of his right to change counsel are denied as moot.

This matter is **REMANDED WITH INSTRUCTIONS** for further proceedings consistent with this opinion.